LAND TITLE COMPANY OF DALLAS, INC., et al., Petitioners,

v.

F. M. STIGLER, INC., et al., Respondents.

No. B–9272.

Supreme Court of Texas.

Dec. 10, 1980.

Rehearing Denied Jan. 21, 1980.

Cowles, Sorrels, Patterson & Thompson, R. Brent Cooper, Dallas, DeLange, Hudspeth, Pitman & Katz, Eugene J. Pitman, Sellers & Berg, Michael G. Tapp, Houston, for petitioners.

Storey, Armstrong, Steger & Martin, Hugh L. Steger, Robert S. Addison and Frederick W. Addison, III, Dallas, for respondents.

DENTON, Justice:

This priority of liens case involves the question of ratification by a principal of the unauthorized act of its agent. Floyd M. Stigler, Inc. and others sued Leon D. Hogg, Jr. for recovery on its note and for judicial foreclosure of its deed of trust. Stigler also sued HNC Realty Company to set aside the foreclosure sale, to declare the subordination agreement invalid, and to declare its prior deed of trust lien superior to HNC's deed of trust. Hogg and HNC filed third–party actions against Land Title Company of Dallas, Inc., d/b/a Southwest Land Title Company, for indemnity and contribution. The trial court found that plaintiff Floyd M. Stigler, Inc. ratified the action of its agent, R. B. Russell, by retaining the benefits of an unauthorized transaction executed by Russell subordinating the Stigler's first lien to that of HNC Realty Company. The trial court rendered judgment that Stigler take nothing against HNC. The court of civil appeals reversed the judgment of the trial court and remanded the cause. 595 S.W.2d 158. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

In 1972, Floyd M. Stigler, Inc. and other heirs of the Lively estate contracted to sell forty–three acres of land, situated in Dallas County, to Leon D. Hogg, Jr. Closing was set for February 15, 1973. Stigler executed a warranty deed to Hogg dated February 12, 1973 and delivered it to its agent R. B. Russell. Hogg executed a deed of trust and note payable to Stigler for $1,418,332.76. A provision was included in the deed of trust that it could be subordinated to a lien for construction and improvements. On February 9, 1973, Stigler executed a power of attorney authorizing Russell to subordinate Stigler's first lien to a subsequent lien for construction and improvements. This power of attorney was filed of record in Dallas County on February 23, 1973.

Because Hogg had difficulty obtaining funds for the down payment, closing was not held on February 15, 1973. Closing was held on August 15, 1973 at which time the warranty deed and deed of trust were filed of record. At closing, Hogg tendered $472,-777.60 to Stigler as down payment of the purchase price.

On May 11, 1973, Hogg and Russell organized Interchange Properties, Inc. The corporation applied for and received a loan of $950,000.00 from HNC Realty Company on August 14, 1973. Hogg secured this loan by giving HNC a deed of trust to the forty–three acres. Simultaneously, Hogg conveyed the property to Interchange. The proceeds of the loan were used to make the down payment to Stigler and to service debt installments on the loan.

Prior to obtaining the loan, Russell executed an agreement, on July 31, 1973, subordinating Stigler's deed of trust lien to HNC's deed of trust lien. This agreement

was executed pursuant to the power of attorney granted Russell to subordinate Stigler's lien to a subsequent lien for "construction and improvements." The subordination agreement specified the loan from HNC was for "improvement and development." This was filed of record on August 15, 1973. Interchange defaulted. On May 7, 1975, HNC foreclosed and subsequently purchased the property.

In response to special issues, the jury found that Russell acted as Stigler's agent in the sale to Hogg; that Russell had authority to execute the subordination agreement; that Stigler had no knowledge of the subordination agreement at the time the down payment was received or that the funds were proceeds of the HNC loan; and, that the subordination agreement became binding on Stigler through ratification. The trial court rendered judgment that Stigler recover the purchase price plus interest, attorneys' fees, and costs from Hogg, but that it take nothing against HNC. The court of civil appeals reversed the judgment and remanded the cause with instructions that the trial court render judgment declaring Stigler's lien prior and superior to HNC's lien, to set aside the foreclosure sale; and, to proceed with judicial foreclosure of Stigler's lien. The court severed Stigler's action against HNC from HNC's third-party action against Southwest Land Title and remanded that action for consideration of the merits of the third-party action. The judgment against Hogg was left undisturbed. The court of civil appeals held that, as a matter of law, Russell lacked authority to execute the subordination agreement unless it involved a lien for construction and improvements. 595 S.W.2d 158, 161. The court further held that Stigler's retention of the down payment did not constitute ratification of the subordination agreement. *Id.* at 160.

■ Stigler contends that ratification was not pleaded properly and should not have been submitted to the jury. Rule 94 of the Texas Rules of Civil Procedure requires that all matters constituting an avoidance or affirmative defense must be pleaded. Ratification is a plea in avoidance and thus an affirmative defense which, absent trial by consent, is waived unless affirmatively pleaded. *Petroleum Anchor Equip., Inc. v. Tyra*, 419 S.W.2d 829, 835 (Tex.1967). The purpose of Rule 94 is to give the opposing party notice of the defensive issues to be tried. *Hunter v. Carter*, 476 S.W.2d 41, 45 (Tex.Civ.App.–Houston [14th Dist.] 1972, writ ref'd n. r. e.); *Musso v. Cronley*, 422 S.W.2d 840, 841 (Tex.Civ. App.–Waco 1967, no writ).

■ In this case, HNC did not plead ratification. Stigler made timely and proper objections to both the charge and special issues. However, ratification was pleaded by Hogg and Southwest Land Title. In determining whether issues are supported by pleadings, the trial court will supply omissions in the pleadings of one party by referring to the allegations contained in the pleadings of another. *Whittington v. Glazier*, 81 S.W.2d 543, 545 (Tex.Civ.App.–Texarkana 1935, writ ref'd). We hold that Stigler had notice that the issue of ratification was to be tried.

■ Ratification may occur when a principal, though he had no knowledge originally of the unauthorized act of his agent, retains the benefits of the transaction after acquiring full knowledge. *Hornblower & Weeks–Hemphill, Noyes v. Crane*, 586 S.W.2d 582, 588 (Tex.Civ.App.–Corpus Christi 1979, writ ref'd n. r. e.); *Condor Petroleum Co. v. Greene*, 164 S.W.2d 713, 721 (Tex.Civ.App.–Eastland 1942, writ ref'd w. o. m.); *Braxton v. Haney*, 82 S.W.2d 984, 986 (Tex.Civ.App.–Waco 1935, writ ref'd).

■ The critical factor in determining whether a principal has ratified an unauthorized act by his agent is the principal's knowledge of the transaction and his actions in light of such knowledge. *See City of Laredo v. Macdonnell and the Ferry Co.*, 52 Tex. 511, 528 (1880); *Vincent v. Rather*, 31 Tex. 77, 91 (1868). Stigler's lack of knowledge of the subordination at the time the down payment was received is not determinative of ratification. What must be considered is Stigler's actions once it ac-

quired knowledge of Russell's act. The court of civil appeals distinguishes the case of *Oberholtzer v. Myles*, 147 S.W.2d 569 (Tex.Civ.App.–Amarillo 1941, writ dism'd judgmt. cor.) on its facts. In *Oberholtzer*, the principal knew that his agent had exceeded his authority at the time he received the benefits of the transaction. By accepting the benefits and refusing to repudiate the transaction with knowledge of the unauthorized act, the principal was found to have ratified the transaction. *Id.* at 574. Here, it is undisputed that Stigler had no knowledge of the subordination agreement when the sale was closed and the down payment made. Stigler's lack of knowledge at this time is not determinative. Rather, its failure to repudiate after learning of the agreement gives rise to ratification.

The evidence shows that HNC would not have made the loan to Interchange unless it was given first lien on the property. The down payment from Hogg to Stigler was directly from the proceeds of the HNC loan. Stigler would not have received any money from Hogg but for the HNC loan. Stigler learned of the subordination agreement after HNC foreclosed on the property. Subsequently, upon demand by Hogg and Southwest Land Title, Stigler refused to repudiate the transaction and tender back the down payment; instead, suit was filed to enforce the contract of sale or rescind the sale and remove cloud from its title.

■ The effect of the judgment of the court of civil appeals is to permit Stigler to recover its land and retain the $472,777.60 down payment received from Hogg by virtue of the HNC loan. We hold that Stigler's refusal to tender back the down payment funds, after learning of the subordination agreement and the source of the money, amounted to an affirmance of Russell's unauthorized act and constituted ratification of the subordination agreement.

The court of civil appeals holds that Stigler's right to retain the down payment does not depend upon ratification of Russell's unauthorized act. In support of this holding, the court relies on language contained in section 99 of the Restatement (Second) of Agency. Section 99 provides:

The retention by a purported principal, with knowledge of the facts and before he has changed his position, *of something which he is not entitled to retain unless an act purported to be done on his account is affirmed,* and *to which he makes no claim except through such act,* constitutes an affirmance unless at the time of such retention he repudiates the act. Even if he repudiates the act, his retention constitutes an affirmance at the election of the other party to the transaction. [Emphasis added.]

■ Stigler argues that its right to the down payment arises solely from the contract of sale with Hogg. Stigler contends this is a claim independent of Russell's execution of the subordination agreement. Here, Russell acted as agent for Stigler in negotiating between two third–parties, Hogg, the buyer, and HNC, the party financing the purchase. Stigler benefitted directly from Russell's negotiations with Hogg and HNC. Hogg was unable to purchase the property unless he obtained a loan to finance the down payment. HNC would not have made the loan but for the agreement subordinating Stigler's lien to HNC's lien. When the benefits received are the direct, certain, and proximate result of an agent's unauthorized act, retention of those benefits after the principal acquires knowledge of the transaction constitutes affirmance of the act and ratification of the transaction. *See Bankers Protective Life Ins. Co. v. Addison*, 237 S.W.2d 694, 698 (Tex.Civ.App.–Amarillo 1951, no writ).

■ Stigler seeks to disaffirm that part of Russell's act subordinating its deed of trust lien to HNC's lien, yet seeks to affirm the loan which resulted in Stigler receiving $472,777.60. A principal may not, in equity, ratify those parts of the transaction which are beneficial and disavow those which are detrimental. Ratification extends to the entire transaction. *Plains Cotton Cooperative Ass'n v. Wolf*, 553 S.W.2d 800, 804 (Tex.Civ.App.–Amarillo 1977, writ ref'd n. r. e.); *First National Bank of Atlanta v. Hargrove*, 503 S.W.2d 856, 860

(Tex.Civ.App.–Texarkana 1973, no writ). *See* RESTATEMENT (SECOND) OF AGENCY § 96, Comment a (1958). We hold that Stigler's retention of the $472,-777.60, after learning of its source, and its refusal to tender back the funds acted as a ratification of the entire transaction which includes the agreement subordinating Stigler's lien to that of HNC.

We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.